## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 20 2017, 8:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas C. Allen
Fort Wayne, Indian

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ronnie M. Williams, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | June 20, 2017 <br><br> Court of Appeals Case No. <br> 02A03-1609-CR-2236 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable Frances C. Gull, Judge <br><br> Trial Court Cause No. <br> 02D06-1601-F6-1 |

**Barnes, Judge.**

# Case Summary

[1] Ronnie Williams appeals his convictions for strangulation and battery as Level 6 felonies. We affirm.

# Issue

[2] The sole issue Williams raises is whether the State presented sufficient evidence to support his convictions.

# Facts

[3] Williams and his girlfriend, N.G., lived together at a home in Fort Wayne with Williams's grandparents. On the evening of December 27, 2015, Williams, N.G., and Williams's stepbrother, Jovan Bryant, went to a casino to gamble, and N.G. consumed alcohol. They returned home around midnight. Williams and Bryant planned to play videogames in the upstairs loft area of the home.

[4] At 1:24 a.m., on December 28, 2015, the Fort Wayne Police Department received multiple 911 emergency calls from N.G. She was upset, crying, and her voice was hoarse when she told the 911 operator that she had been "beat up" and that her face was "all bloody." Exhibit Vol. p. 5, State's Exhibit 1. She identified Williams as her attacker and stated that "she didn't do anything to him" and that Williams "just beat [her] up." *Id.* She told the 911 operator that she needed help and that Williams had left the home in a vehicle.

[5] Officer Chad Schipper responded to the call. He arrived at the home at approximately 1:30 a.m. and saw that N.G. had blood on her face and clothes.

Her nose and the left side of her cheek were swollen, and she was bleeding from her lips. The officer saw that clothing and furniture were scattered in the loft area. He testified that N.G. smelled of alcohol but that she did not appear to be intoxicated. She did not slur her words, and she understood the questions he posed to her.

[6] N.G. told Officer Schipper that she, Williams, and Bryant had been drinking at the casino. When they returned home, she and Williams argued, and their argument turned into a physical altercation. She stated that Williams slammed her against the wall, told her to stop talking, and threw her to the ground. Williams then grabbed N.G. by the throat with his left hand and struck the left side of her face several times with his right fist and elbow area. She stated that, while he had his hand on her throat, she had difficulty breathing.

[7] N.G. was treated at the scene by a paramedic who asked her questions about the incident and her injuries. N.G. told the paramedic that she had been punched in the face. The paramedic testified that N.G. suffered from blunt trauma to her face, that her face was swollen, and that she had blood on her lower lip. N.G. complained of facial pain. The paramedic did not detect an odor of alcohol on N.G. He testified that it was possible that her injuries were sustained by falling down the stairs, but not probable.

[8] Officer Jhormy Martinez arrived at the scene and photographed the inside of the home and N.G. When he finished, he transported N.G. to her sister's house.

[9] A few hours after the incident occurred, at approximately 9:30 a.m., an officer was dispatched to the house where Williams and N.G. resided because N.G.'s sister reported to the police that N.G. was no longer at her home. Williams's grandparents allowed the responding officer to enter the home and led the officer to the upstairs bedroom. When he opened the door, he saw a naked Williams leap out of the bed and run toward the window. The officer also saw that N.G. was in the bed. She appeared to be severely battered. One of her eyes was swollen shut, and when she tried to talk, one side of her face did not move.

[10] The officer handcuffed Williams. Both Williams and N.G. were transported to the Allen County Sheriff's Department. The officer who interviewed Williams noticed that Williams had scratches on his arms and neck that he believed were consistent with wounds received while attempting to strangle someone. Pictures were taken of Williams's wounds. Williams was charged with strangulation and battery as Level 6 felonies and domestic battery as a Class A misdemeanor.

[11] At Williams's jury trial, witnesses offered differing versions of what transpired the night of the incident. N.G. testified that she, Williams, and Bryant went to a casino to gamble, but no one won any money. She also testified she had been drinking alcohol and was "really drunk;" she did not recall the night of the incident, what happened to her, or how she received her injuries; she did not remember when Williams and Bryant left the home; she did not remember calling the police; she did not recognize pictures of her taken by the police after

she sustained her injuries; and she still was very intoxicated the morning after the incident occurred. Tr. p. 114.

[12] Both Williams and Bryant testified that, when the three returned from the casino, they all were happy because Williams had won money. N.G. was very intoxicated. Williams and Bryant decided to play a videogame in the loft area of the house. N.G. stepped onto a hoverboard and began "swerving around" and veering at Williams. *Id*. at 219. N.G. and Williams collided, and they fell down the stairs together with the hoverboard. When N.G. got up from the fall, she looked at her face in a mirror and "freak[ed] out" when she saw her injuries. *Id*. at 220. She charged at Williams and tried to hit him. Williams put his arms out so that she could not strike his face. Bryant then grabbed Williams, and the two left the home. Williams testified that his and N.G.'s fall, along with the hoverboard, put a hole in the wall and broke the rails out of the staircase. However, none of the officers who entered Williams's and N.G.'s home saw a hoverboard or any damage to the walls of the home or the staircase.

[13] A jury found Williams guilty as charged. The trial court merged his convictions for domestic battery and battery, due to double jeopardy concerns. Williams was sentenced to an aggregate sentence of three years. Williams now appeals.

## Analysis

[14] Williams argues that the State presented insufficient evidence that he committed strangulation and battery because two witnesses testified that N.G.

sustained her injuries after attempting to ride a hoverboard and falling down the stairs and that she attacked Williams; Williams sustained wounds from the incident; N.G.'s statements regarding the incident were inconsistent because she told the responding officer that Williams strangled her, but did not tell this to the 911 operator; N.G.'s behavior was not consistent with her being a victim of an attack; and N.G. was not a credible witness because she was intoxicated at the time of the incident. We find there was ample evidence presented from which a jury could conclude that Williams strangled and battered N.G.

[15] When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Jones v. State,* 783 N.E.2d 1132, 1139 (Ind. 2003). Rather, we look only to the probative evidence supporting the judgment and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id.* If there is substantial evidence of probative value to support the conviction, it will not be set aside. *Id.*

[16] To prove strangulation, the State was required to show that Williams, "in a rude, angry, or insolent manner, knowingly or intentionally: (1) applie[d] pressure to the throat or neck of another person . . . in a manner that impede[d] the normal breathing or the blood circulation of the other person." Indiana Code Section 35-42-2-9. To convict Williams of battery as a Level 6 felony, the State was required to prove that Williams knowingly or intentionally touched

N.G. in a rude, insolent, or angry manner, resulting in moderate bodily injury to N.G. I.C. § 35-42-2-1(d)(1).

[17] Although N.G. testified that she did not remember the incident, evidence presented at trial established that, when N.G. placed the 911 emergency call, she was crying, upset, and her voice was hoarse. She told the 911 operator that she had been beaten by Williams and that her face was bloody. Officer Schipper testified that he arrived at N.G.'s home shortly after she placed the 911 call and that she was crying. The officer testified that he could smell alcohol on N.G. but that she was not drunk, was not slurring her words, and understood the questions he asked her. N.G. told the officer that Williams slammed her against the wall, threw her to the ground, grabbed her by the throat, and struck her several times in the face with his fist and elbow area. N.G. stated that, when Williams had his hand on her throat, it was hard for her to breathe and she started to lose consciousness. The officer saw that N.G. had blood on her face and clothes, that her nose and cheek were swollen, and that her lips were bleeding.

[18] N.G. told the paramedic who arrived at the scene that she had been punched in the face, and the paramedic saw that N.G. had blunt trauma to her face. Pictures of N.G. that were taken at the scene showed red marks on N.G.'s neck. The officer who saw N.G. several hours after the incident occurred noticed that N.G.'s eye was swollen shut.

[19] An officer trained in domestic violence testified that Williams's wounds were consistent with the kind of wounds that are inflicted when a victim fights for her life. Although Williams and Bryant testified that the injuries sustained by N.G. and Williams resulted from an accident involving a hoverboard and a fall downstairs, the officers involved in the investigation did not find a hoverboard in the home and did not observe any damage to the home's wall or staircase.

[20] The jury is free to believe or disbelieve witnesses, as it sees fit. *McClendon v. State*, 671 N.E.2d 486, 488 (Ind. Ct. App. 1996). We respect the jury's "exclusive province to weigh conflicting evidence." *McHenry v. State,* 820 N.E.2d 124, 126 (Ind. 2005). The jury found Williams guilty as charged. The arguments Williams presents are an invitation to reweigh the evidence, which we will not do. *Jones*, 783 N.E.2d at 1139. We conclude that the State presented sufficient evidence to support Williams's convictions for strangulation and battery.

# Conclusion

[21] For the foregoing reasons, we affirm William's convictions for strangulation and battery.

[22] Affirmed.

Kirsch, J., and Robb, J., concur.